Ahaus Tool & Engineering Inc. ("Ahaus"), by its undersigned attorney, respectfully alleges:

## PRELIMINARY STATEMENT

1.     A fundamental tenet in American jurisprudence is that all court proceedings should be open to the public at large, because the public has a right, rooted in the First Amendment, to know about the administration of justice. Another core tenet in American jurisprudence is that a party is entitled to notice that it is being sued. Neither of these principles was followed here. Instead, Delphi Corporation ("Delphi") and the other Debtors (defined below), the plaintiffs herein (collectively, the "Plaintiffs") have, through the two-step combination of (i) filing of complaints under seal and (ii) filing a series of motions without notice to the parties who had an interest in opposing them, perverted the Federal Rules of Civil Procedure in an attempt to surreptitiously and indefinitely extend the two-year statute of limitations imposed pursuant to 11 U.S.C. § 546(a), which absolutely bars the prosecution of the above-captioned adversary proceeding, commenced under seal on September 29, 2007, and served on or about December 29, 2009 on Ahaus (the "Adversary Proceeding").

2.     Consequently, Ahaus seeks an order of this Court:

(i) vacating, with respect to Ahaus, pursuant to Fed. R. Civ. P. 60 and Fed. R. Bankr. P. 9024, the orders of this Court, dated August 16, 2007 (the "Preservation of Estate Claims Procedures Order"); March 28, 2008 (the "Extension of Avoidance Action Service Deadline Order"); April 30, 2008 (the "Post-confirmation Extension of Avoidance Action Service Deadline Order"); and October 22, 2009 (the "Supplemental Post-confirmation Extension of Avoidance Action Service Deadline

Order" and, together with the Extension of Avoidance Action Service Deadline Order and the Post-confirmation Extension of Avoidance Action Service Deadline Order, the "Extension Orders"), on the grounds that each such order is void against Ahaus by virtue of the Debtors' and Plaintiffs' intentional failure to provide Ahaus with notice of the motions and that the Extension Orders were improvidently made; and

(ii)  ismissing, with prejudice, the Adversary Proceeding against Ahaus, pursuant to Fed. R. Civ. P. 12(b) and Fed. R. Bankr. P. 7012(b) on the ground that it is barred by the two-year statute of limitations imposed by 11 U.S.C. § 546(a) and, therefore, fails to state a claim upon which relief may be granted; or

(iii)   in the alternative, dismissing, with prejudice, the Adversary Proceeding against Ahaus on the ground that it is barred by judicial estoppel.

## STATEMENT OF FACTS

3.      On October 8, 2005, Delphi and certain of its subsidiaries (the "Initial Filers") each filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, the "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code. (Complaint, dated September 26, 2007, annexed hereto as Exhibit A (the "Complaint"), at ¶ 1).

4.      Prior to the commencement of the Debtors' cases, Ahaus bid on contracts for Delphi. It won some contracts and provided goods and services to Delphi.

*(i) Preservation of Estate Claims Procedures Motion and Order*

5.      By motion dated August 6, 2007 (the "Preservation of Estate Claims Procedures Motion"), the Debtors sought entry of an order seeking, among other things, the establishment of procedures for certain adversary proceedings, including those commenced by the Debtors under Bankruptcy Code §§ 541, 544, 545, 547, 548 or 553. (Preservation of Estate Claims Procedures Motion, annexed hereto as Exhibit B, at ¶ 17).As pertinent here, the procedures sought included (i) pursuant to Fed. R. Civ. P. 4(m), an  extension of time beyond the initial 120-day period to serve certain adversary summonses and complaints, (ii) a stay of the applicable adversary proceedings until service of process was effected, and (iii) permitting the Plaintiffs to file the complaints under seal. (Id. at ¶¶33-38).

6.      The aforementioned procedures were purportedly intended to permit the Debtors to "preserve the status quo," and "potentially valuable assets without disrupting the plan process or existing business relationships prematurely or prejudicing the rights of any defendants," as well as to "avoid having to force all potential defendants to retain counsel to defend against adversary proceedings when, in fact, most of them likely will be resolved by a reorganization plan and never pursued." (Id. at ¶¶ 33-34).

7.      In addition, as relates to the request to file the complaints under seal, the Debtors also sought to so act in order to "avoid unnecessarily alarming potential defendants," and because the "Debtors have worked to preserve and repair their

business relationship with many of the potential defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so." (Id. at ¶ 37).

8. No notice of the Preservation of Estate Claims Procedures Motion was given to Ahaus. (Affidavit of Service, dated August 10, 2007, annexed hereto as Exhibit C).

9. On August 16, 2007, this Court entered the Preservation of Estate Claims Procedures Order, granting the aforementioned relief requested in the Preservation of Estate Claims Procedures Motion by (i) allowing the Debtors to file adversary proceeding complaints under seal, (ii) directing the Clerk of the Court to delay issuing summonses for complaints unless and until the Debtors notified the Clerk of their intent to prosecute such actions, (iii) staying each adversary action unless and until the Debtors effectuated service of process on the respective defendants, and (iv) extending the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would have to serve process to March 31, 2008, so that the complaints would not be subject to dismissal under Fed. R. Civ. P. 4(m). (Preservation of Estate Claims Procedures Order, annexed hereto as Exhibit D, at ¶¶ 7-10).


10. Paragraph 11 of the Preservation of Estate Claims Procedures Order provides that "[t]he Debtors must serve a copy of this order upon each defendant in any [adversary proceeding] either when the Debtors serve a summons and complaint on the defendant or as soon thereafter as practicable." (Id. at ¶ 11).

11.     On September 29, 2007, Plaintiffs commenced the Adversary Proceeding by filing the Complaint under seal with the Clerk. The Complaint seeks to recover, pursuant to Bankruptcy Code §§ 547 and 550, alleged preferential transfers made to Ahaus in the aggregate amount of $431,910. (Complaint; Docket for Adversary Proceeding 07-02076, annexed hereto as Exhibit E, at entry no. 1).

12.     The statute of limitations for commencing avoidance actions pursuant to Bankruptcy Code §§ 541, 544, 545, 547, 548 or 553 expired on October 8, 2007. (11 U.S.C. § 546(a)).

13.     On January 25, 2008, the Court entered an order confirming the Debtors' first amended joint plan of reorganization (the "Plan"). (Findings of Fact, Conclusions of Law, and Order under 11 U.S.C. §§ 1129(a) and (b) and Fed. R. Bankr. P. 3020 confirming First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession, as Modified, dated January 25, 2008 (the "Confirmation Order"), annexed hereto as Exhibit F).

*(iii)*     *Extension of Avoidance Action Service Deadline Motion and Order*

14.     By motion dated February 28, 2008 (the "Extension of Avoidance Action Service Deadline Motion"), the Debtors sought to modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, so as to extend for a second time the deadline under Fed. Civ. P. 4(m) by which the Debtors would be required to serve

process by an additional two months to May 31, 2008. (Extension of Avoidance Action Service Deadline Motion, annexed hereto as Exhibit G, at ¶ 18).

15.     The stated purpose for this extension was to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations," as well as "reduce the administrative and economic burdens of the adversary proceedings] on the Debtors, the Court, the Clerk of Court, and the potential defendants." (Id. at ¶ 21).

16.     In the Extension of Avoidance Action Service Deadline Motion, the Debtors also stated that they would "not retain any of the causes of action asserted in the [adversary proceedings] except those specifically listed on Exhibit 7.24 to the Plan."[1]     (Id. at ¶ 17). In fact, the Debtors stated that of the 742 adversary proceedings commenced under seal, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims Procedures Order. (Id. at ¶ 17, n.4).

17.     No notice of the Preservation of Estate Claims Procedures Motion was given to Ahaus. (Affidavit of Service, dated March 4, 2008, annexed hereto as Exhibit H).

_____

[1] Exhibit 7.24 to the Plan apparently was never filed with the Court.

18.     On March 28, 2008, the Court entered the Extension of Avoidance Action Service Deadline Order, modifying Paragraph 8 of the Preservation of Estate Claims Procedures Order so that the time under Fed. R. Civ. P. 4(m) by which the Debtors must serve a defendant in the adversary proceedings with a summons and complaint was further extended to May 31, 2008. (Extension of Avoidance Action Service Deadline Order, annexed hereto as Exhibit I, at ¶ 2).

19.     Consistent with Paragraph 11 of the Preservation of Estate Claims Procedures Order, Paragraph 2 of the Extension of Avoidance Action Service Deadline Order provided that the "Debtors shall serve a copy of this order upon each defendant in any [adversary proceeding] either when the Debtors serve a summons and complaint on such defendant or as soon thereafter as practicable." (Id. at ¶ 2).

*(iv)     Post-confirmation Extension of Avoidance Action Service Deadline Motion and Order*

20.     By motion dated April 10, 2008 (the "Postconfirmation Extension of Avoidance Action Service Deadline Motion"), the Debtors sought to further modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, as modified by the Extension of Avoidance Action Service Deadline Order, so as to extend for a third time the deadline under Fed. R. Civ. P. 4(m) by which the Debtors would have to serve process until 30 days after substantial consummation of the Plan or any modified plan. (Post-confirmation Extension of Avoidance Action Service Deadline Motion, annexed hereto as Exhibit J, at ¶ 19).

21.     The stated purpose for this extension was identical to the purpose set forth in support of the Extension of Avoidance Action Service Deadline Motion,

namely, to "enable the Debtors to fulfill their fiduciary responsibility to preserve valuable estate assets in a manner that would not unnecessarily disrupt the emergence process or the Debtors' current business relationships with potential defendants that are necessary to the Debtors' ongoing operations," as well as "reduce the administrative and economic burdens of the adversary proceedings] on the Debtors, the Court, the Clerk of Court, and the potential defendants." (Id. at ¶ 22).

22.     The Post-confirmation Extension of Avoidance Action Service Deadline Motion once again stated that (i) the Debtors would "not retain any of the causes of action asserted in the [adversary proceedings] except those specifically listed on Exhibit 7.24 to the Plan;" and (ii) of the 742 adversary proceedings commenced under seal, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims Procedures Order. (Id. at ¶ 18 and n.4). Unlike the other defendants, these three entities were provided with notice of the Postconfirmation Extension of Avoidance Action Service Deadline Motion. (Id. at ¶ 18, n.4).

23.     No notice of the Post-confirmation Extension of Avoidance Action Service Deadline Motion was given to Ahaus. (Affidavit of Service, dated April 16, 2008, annexed hereto as Exhibit K).


24.     On April 30, 2008, the Court entered the Post-confirmation Extension of Avoidance Action Service Deadline Order, modifying Paragraph 8 of the Preservation of Estate Claims Procedures Order, as previously modified by the Extension of Avoidance Action Service Deadline Order, so that the time under Fed. R. Civ. P. 4(m)

by which the Debtors must serve a defendant in the adversary proceedings with a summons and complaint was further extended until 30 days after the later of substantial consummation of the Plan or any modified Chapter 11 plan for the Debtors and December 31, 2008. (Post-confirmation Extension of Avoidance Action Service Deadline Order, annexed hereto as Exhibit L, at ¶ 2).

25.     The Post-confirmation Extension of Avoidance Action Service Deadline Order contained the same decretal paragraph set forth in Paragraph 19 above. (Id. at ¶ 2).

*(v) Entry of Modification Approval Order and Effective Date*

26.     On July 30, 2009, the Court entered an order (the "Modification Approval Order") approving certain modifications to the Plan (the "Modified Plan"). (Notice of (A) Order Approving Modifications to First Amended Joint Plan of Reorganization of Delphi Corporation and Certain Affiliates, Debtors and Debtors-in-Possession and (B) Occurrence of Effective Date, dated October 6, 2009, annexed hereto as Exhibit M, at ¶ 2).   The effective date of the Modified Plan occurred on October 6, 2009. (Id. at ¶ 3).

*(vi)     Supplemental Post-confirmation Extension of Avoidance Action Service Deadline Motion and Order*

27.     By motion dated October 2, 2009 (the "Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Motion"), the Debtors sought to further modify Paragraph 8 of the Preservation of Estate Claims Procedures Order, as modified by the Extension of Avoidance Action Service Deadline Order and the Post-confirmation Extension of Avoidance Action Service Deadline Order, so as to extend

for a fourth time the deadline under Fed. R. Civ. P. 4(m) by which the Debtors were required to serve process until 180 days after substantial consummation of the Modified Plan. (Supplemental Post-confirmation Extension of Avoidance Action Service Deadline Motion, annexed hereto as Exhibit N, at ¶ 16).

28.     The Debtors stated that this further extension was necessary in light of the fact that the Debtors now anticipated that they would retain 177 of the adversary proceedings filed under seal. The Debtors asserted that 30 days after substantial consummation of the Modified Plan was not sufficient time to "assess the ongoing relationship with certain defendants and whether events since initiating the [adversary proceedings] have impacted the Debtors' estimated recoveries," and determine whether to pursue such retained adversary proceedings. The Debtors thus fell back to their rote justification and stated that an extension "would reduce the administrative and economic burdens of the [retained adversary proceedings] on the Debtors and the potential defendants." (Id. at ¶¶ 17, 19).

29.     No notice of the Supplemental Post-confirmation Extension of Avoidance Action Service Deadline Motion was given to Ahaus. (Affidavit of Service, dated October 7, 2009, annexed hereto as Exhibit O).

30.     On October 22, 2009, the Court entered the Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Order, modifying Paragraph 8 of the Preservation of Estate Claims Procedures Order, as previously modified by the Extension of Avoidance Action Service Deadline Order and the Postconfirmation Extension of Avoidance Action Service Deadline Order, so that the time under Fed. R. Civ. P. 4(m) by which the Debtors were required to serve a

defendant in the adversary proceedings with a summons and complaint was further extended until 180 days after substantial consummation of the Modified Plan. (Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Order, annexed hereto as Exhibit P, at ¶ 2).

31. The Supplemental Postconfirmation Extension of Avoidance Action Service Deadline Order contained the same decretal paragraph set forth in Paragraph 19 above. (Id. at ¶ 2).

*(vii)* *Service of Process on Ahaus*

32. Ahaus was served with the Complaint on or about December 29, 2009, over two years after the limitations period provided by Bankruptcy Code § 546(a) expired.

## ARGUMENT

**I. EACH OF THE PRESERVATION OF ESTATE CLAIMS PROCEDURES ORDER AND THE EXTENSION ORDERS SHOULD BE VACATED AS AGAINST AHAUS ON THE GROUNDS THAT EACH IS VOID BY VIRTUE OF THE PLAINTIFFS' INTENTIONAL FAILURE TO PROVIDE AHAUS WITH NOTICE OF THE MOTIONS IN SUPPORT THEREOF AND THAT SUCH ORDERS WERE IMPROVIDENTLY ENTERED.**

33. Fed. R. Civ. P. 60(b), as made applicable by Fed. R. Bankr. P. 9024, provides, in relevant part:

On motion and just terms, the Court may relieve a party or its legal representative from a final judgment, order or proceeding for the following reasons: . . . (6) any other reason that justifies relief.

34. Ahaus respectfully submits that the combination of permitting the Plaintiffs to file the Complaint under seal -- thereby preventing Ahaus from discovering

that it had been sued -- while continually extending the Plaintiffs' time to serve process in excess of two years past the expiration of the statute of limitations set forth in Bankruptcy Code §546(a) -- also without notice to Ahaus -- has resulted in a proceeding completely devoid of procedural due process. Accordingly, and for the reasons set forth below, the Preservation of Estate Claims Procedures Order and each of the Extension Orders must be vacated as against Ahaus.

### A. The Complaint Was Improperly Filed under Seal Pursuant to Section 107 of the Bankruptcy Code.

35.     There "is a strong presumption and public policy in favor of public access to court records," which is "rooted in the public's First Amendment right to know about the administration of justice." In re Food Management Group, LLC, 359 B.R. 543, 553 (Bankr. S.D.N.Y. 2007) (internal citations and quotations omitted). In fact, the "public interest in openness of court proceedings is at its zenith when issues concerning the integrity and transparency of bankruptcy court proceedings are involved." Id.; see also Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.), 422 F.3d 1, 7 (1st Cir. 2005) ("This governmental interest is of special importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system.").

36.     Section 107(a) of the Bankruptcy Code codified the common law right of public access in the bankruptcy setting and provides, in relevant part, that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." 11 U.S.C. § 107(a); In re Food Management Group, LLC, 359 B.R. at 553. The "plain meaning of

§ 107(a) mandates that *all* papers filed with the bankruptcy court are 'public records' unless the bankruptcy court 'decides to protect the information pursuant to the standards set forth in [§] 107(b).'" In re <u>Food Management Group, LLC</u>, 359 B.R. at 553 (quoting <u>Air Line Pilots Ass'n Int'l v. Am. Nat'l Bank and Trust Co. (In re Ionosphere Clubs)</u>, 156 B.R. 414, 433 n.7 (S.D.N.Y. 1993)).

37.     Section 107(b) of the Bankruptcy Code establishes two exceptions to the general right of access where under "compelling or extraordinary circumstances" an exception is necessary. <u>Video Software Dealers Ass'n v. Orion Pictures Corp. (In re Orion Pictures Corp.)</u>, 21 F.3d 24, 27 (2d Cir. 1994). Section 107(b) provides:

> On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may – (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

11 U.S.C. § 107(b). However, "a judge must carefully and skeptically review sealing requests to insure that there really is an extraordinary circumstance or compelling need" to keep the material private. <u>In re Food Management Group, LLC</u>, 359 B.R. at 554 (internal citation and quotation omitted).

38.     The Debtors invoked Section 107(b)(1) when requesting that the Court permit the filing of the complaints commencing the avoidance action adversary proceedings under seal. As mentioned above, in the Preservation of Estate Claims Procedures Motion, the Debtors sought to characterize preservation of the status quo and existing business relationships as "commercial information" in need of protection. In connection therewith, the Debtors alleged that they "have worked to preserve and

repair their business relationship with many of the potential defendants during these cases and have negotiated or regained favorable credit terms with many suppliers and are continuing to do so."[2]

39.    Commercial information, however, has never been defined by the Courts so broadly as to protect information that would be prejudicial to the Debtors vis-à-vis their own creditors. Rather, commercial information has been defined "as information which would cause an *unfair advantage to competitors* by providing them information as to the commercial operations of the debtor." In re Orion Pictures Corp., 21 F.3d at 27 (emphasis added). Ahaus is not a competitor of the Debtors, nor is it a "supplier" of the Debtors that continued to engage in business with them. The fact that the Debtors are seeking to avoid allegedly preferential payments to Ahaus was, therefore, not "commercial information" that needed to be kept or should have been kept confidential. Accordingly, the Preservation of Estate Claims Procedures Order as relates to the authority to file the Complaint under seal should be vacated as to Ahaus.

**B.    Ahaus Was Not Served with Notice of the Motions in Support of the Preservation of Estate Claims Procedures Order and Each of the Extension Orders.**

40.    It has long been held that the "fundamental requisite of due process of law is the opportunity to be heard." Grannis v. Ordean, 234 U.S. 385, 394 (1914). This right to be heard, however, "has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or

_____

[2] In support of the their proposition that maintenance of ongoing business relationships was "commercial information" entitled to protection, the Debtors cited to In re Service Merchandise, et al., Case No. 399-02649 (Bankr. M.D. Tenn. Feb. 27, 2001) where the court granted the debtors authority to file under seal certain adversary proceedings so that they could continue negotiations with the defendants, who were also the debtors' business partners. Even if the ruling were correct as a matter of law, which Ahaus disputes, the case is inapposite to the situation here, as Ahaus is not a business partner of the Debtors.

contest." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950).

Thus, an "elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." Id. at 314; Barcia v. Sitkin, 367 F.3d 87, 107 (2d Cir. 2004) (same); Weigner v. City of New York, 852 F.2d 646, 654 (2d Cir. 1988) (same).

41.     Ahaus was not given any notice of the motions for the Preservation of Estate Claims Procedures Order and each of the Extension Orders and none of the motions identified Ahaus as a potential defendant. To the contrary, the motions, with the added component of authority to file the complaints under seal, devised a procedural Star Chamber where Ahaus was intentionally kept in the dark as to its status as a defendant, which information was continually suppressed against the only party with an adverse interest in the matter. Such a deprivation of due process is wrong.

42.     The Debtors attempted to justify this lack of procedural due process on the grounds that it "avoid[ed] unnecessarily alarming potential defendants" and "having to force all potential defendants to retain counsel to defend against adversary proceedings when, in fact, most of them likely will be resolved by a reorganization plan and never pursued." (Preservation of Estate Claims Procedures Motion, at ¶¶ 34, 37). These justifications have no merit. The Debtors had an option – sue the defendants or not sue the defendants. Importantly, Ahaus would have had notice that it was being

sued, and it would have had the ability to oppose the motions seeking the Preservation of Estate Claims Procedures Order and the Extension Orders.

43.     Delphi apparently delayed suing on preferences to get votes for the plan, which they might not get if the creditors knew they would be sued for preferences. Ahaus was asked to vote on the plan.  But, potential preference defendants were not adequately notified that they might be sued?   The disclosure in the disclosure statement was not adequate. The voting and solicitation of votes a stealth solicitation.  The Debtors may have fraudulently procured votes for the plan. Unsecured creditors were previously told in a plan, disclosure statement and elsewhere that they were being paid in full. There was an equity holders' committee appointed. This is unusual and signifies creditors might be paid in full.   Now, unsecured creditors may get nothing. That is more than a post-confirmation modification of a plan under section 1127(b) of the Bankruptcy Code. Creditors are getting very little if anything. How much time and effort should they and/or their attorneys put in for years reading plans, disclosure statements, amended plans, modifications of amended plans, and numerous other lengthy, complicated documents?  Were various orders, even the confirmation order improper and subject to being overturned under Bankruptcy Rule 7060 (b)?

44.     For all of the foregoing reasons, each of the Preservation of Estate Claims Procedures Order, the Extension of Avoidance Action Service Deadline Order, the Post-confirmation Extension of Avoidance Action Service Deadline Order, and the Supplemental Post-confirmation Extension of Avoidance Action Service Deadline Order should be vacated on the ground that each is improvidently entered and void against Ahaus.

## II.  THE COMPLAINT IS BARRED BY THE STATUTE OF LIMITATIONS AND SHOULD BE DISMISSED.

45. Section 546(a) of the Bankruptcy Code, which sets forth the statute of limitations on avoiding powers, provides:

> An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of – (1) the later of – (A) 2 years after the entry of the order for relief; or (B) 1 year after the appointment or election of the first trustee under section 702, 1104, 1163, 1202, or 1302 of this title if such appointment or such election occurs before the expiration of the period specified in subparagraph (A); or (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a). The deadline for commencing an adversary proceeding against Ahaus on account of an allegedly avoidable preference expired on October 8, 2007. The Plaintiffs filed the Complaint under seal on or about September 29, 2007, but did not serve Ahaus with such Complaint until on or about December 29, 2009, over two years after the statute of limitations contained in Section 546(a) expired.

46. To bridge the gap between the time that Ahaus should have been served with the Complaint and the date on which it was actually served with the Complaint, the Plaintiffs rely on the Extension Orders sought and entered, pursuant to Fed. R. Civ. P. 4(m), *ex parte* from the one entity that had an adverse interest, namely, Ahaus. Fed. R. Civ. P. 4(m), made applicable by Fed. R. Bankr. P. 7004(a), provides, in relevant part:

> *Time Limit for Service*. If a defendant is not served within 120 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

47. The Extension Orders should not have been entered, as good cause did not exist to extend the time to serve process as a matter of law. Good cause generally

exists under Fed. R. Civ. P. 4(m) when service is not completed on a named defendant within the required 120-day period. Ahern v. Neve, 285 F.Supp.2d 317, 320 (E.D.N.Y. 2003). It does not exist, however, in situations where the Plaintiffs know and can serve the named defendants, but simply choose not to do so, and where the sole purpose in seeking the extension of time is to prevent defendants from learning that they had been sued.[3] The use of procedural rules to obtain a result not contemplated by the accompanying substantive law is simply not permitted. See 28 U.S.C. § 2075 (rules prescribed by the United States Supreme Court "shall not abridge, enlarge, or modify any substantive right"); see also Morse v. Perrotta (In re Perrotta), 406 B.R. 1, 8 (Bankr. D. N.H. 2009) ("Therefore, to the extent that the Bankruptcy Rules and the Bankruptcy Code are inconsistent, the statute controls.").

48. Moreover, while it is true that courts have the discretion to extend the time for service of process, such extensions were not warranted here. Courts have held that statutes of limitation are statutes of repose, and they "are enacted upon the presumption, that one having a well-founded claim will not delay enforcing it beyond a reasonable time, if he has the power to sue." In re Cornwall, 9 Blatchf. 114, 6 F.Cas. 586, 591 (C.C.D. Conn. Sept. Term 1871). Indeed, the purpose of statutes of repose is primarily give notice to plaintiffs of the time within which to bring suit and to potential

-----------------------------------------------------------------

[3] As support for extending the time to serve process on defendants, the Debtors cited Bank of Cape Verde v. Bronson, 167 F.R.D. 370, 371-72 (S.D.N.Y. 1996) for the proposition that good cause existed where future events would have likely "obviated the need to serve the [] complaint" and when the plaintiff requested the extension before the deadline expired. This case is inapplicable to the facts here. In Bank of Cape Verde, the third-party plaintiff was pursuing good-faith settlement negotiations with the plaintiff and third-party defendants, and had already served all or most of the parties to the action prior to the expiration of the 120-day deadline. That is a far cry from the situation here, where Ahaus was not, and could not have been, in settlement negotiations with the Plaintiffs, as it did not even know that it had been sued.

Defendants of the time beyond which exposure to liability ceases. See Diversified Hospitality Group, Inc. v. Carson Pirie Scott & Co., 1991 WL 35953, at *5 (S.D.N.Y. Mar. 8, 1991).

49.     Statutes of repose are only to be outweighed where "the interests of justice require vindication of the plaintiff's rights." Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family Golf Ctrs., Inc.), 288 B.R. 701, 705 (Bankr. S.D.N.Y. 2003). Such circumstances occur where the plaintiff has not slept on its rights, has commenced a timely state court action in a court of competent jurisdiction, the particular defect in the complaint is waivable and frequently waived, and the defendant "*could not have relied upon the policy of repose embodied in the limitation statute, for it was aware that [the plaintiff] was actively pursuing his . . . remedy.*" Id. (quoting Burnett v. N.Y. Cent. R.R. Co., 380 U.S. 424, 428-29 (1965)) (emphasis added).

50.     Here, Ahaus was entitled to rely, had no reason not to rely, and indeed relied, upon the policy of repose embedded within Section 546(a) of the Bankruptcy Code, having received no notice for more than two years after the statute of limitations had expired that it had been sued by the Plaintiffs.[4]

51.     Thus, while it is generally the policy of the courts to decide cases on the merits where possible,

> if the Rules are to mean anything, parties must diligently try to follow them and courts must enforce them, even if it means that cases must sometimes be finally determined on procedural grounds rather than on their substantive merits.

---

[4] Ahaus also could not have discovered on its own that it had been sued in light of the Complaint being filed under seal.

Mused v. U.S. Dep't of Agriculture Food and Nutrition Serv., 169 F.R.D. 28, 35 (W.D.N.Y. 1996). Because the Debtors did not give notice to Ahaus that it had been sued and denied Ahaus the right to be heard and object to the motions supporting the Preservation of Estate Claims Procedures Order and each of the Extension Orders, the Complaint should be dismissed on procedural, and not substantive, grounds. Having devised and imposed this scheme on Ahaus, the Debtors cannot now cry foul to the effects of their machinations. They did not even comply with their own scheme. They did not serve the Extension Orders on Ahaus as required by the Extension Orders.

52. Accordingly, the Complaint should be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6) and Fed. R. Bankr. P. 7012(b).

## III. IN THE ALTERNATIVE, THE COMPLAINT IS BARRED BY JUDICIAL ESTOPPEL AND SHOULD BE DISMISSED.

53. The equitable principle of judicial estoppel "prevents a party from asserting a factual position in a legal proceeding that is contrary to a position previously taken by [that party] in a prior legal proceeding." In re Venture Mortgage Fund, L.P., 245 B.R. 460, 471 (2000), aff'd, 282 F.3d 185 (2d Cir. 2002). The purpose of judicial estoppel is to "protect the integrity of the judicial process . . . by prohibiting parties from deliberately changing positions according to the exigencies of the moment." New Hampshire v. Maine, 532 U.S. 742, 749 (2001); see also Rosenshein v. Kleban, 918 F.Supp. 98, 104 (S.D.N.Y. 1996) ("Judicial estoppel is invoked . . . to prevent the party from playing fast and loose with the courts, and to protect the essential integrity of the judicial process.").

54.     In the Second Circuit, the following two factors must be satisfied to invoke the doctrine of judicial estoppel: (i) the party against whom estoppel is asserted took an inconsistent position in a prior proceeding, and (ii) the first tribunal adopted the inconsistent position in some manner, such as by rendering a favorable judgment. In re Venture Mortgage Fund, L.P., 245 B.R. at 472. The doctrine, however, does not depend upon prejudice to the party invoking it. Galerie Des Monnaies of Geneva, Ltd. v. Deutsche Bank, A.G., New York Branch (In re Galerie Des Monnaies of Geneva, Ltd.), 55 B.R. 253, 260 (Bankr. S.D.N.Y. 1985), aff'd, 62 B.R. 224 (S.D.N.Y. 1986).

55.     Both factors are satisfied here. First, in their Extension of Avoidance Action Service Deadline Motion, the Debtors asserted that they would "not retain any of the causes of action asserted in the [adversary proceedings] except those specifically listed on Exhibit 7.24 to the Plan." (Extension of Avoidance Action Service Deadline Motion, at ¶ 17). In fact, the Debtors stated that of the 742 adversary proceedings commenced under seal, only the claims relating to Laneko Engineering Co., Wachovia Bank, National Association, Laneko Engineering Co. Inc., and their affiliates and subsidiaries were subject to the Preservation of Estate Claims Procedures Order. (Id. at ¶ 17, n.4). The Debtors reiterated this assertion in their Post-confirmation Extension of Avoidance Action Service Deadline Motion. (Post-confirmation Extension of Avoidance Action Service Deadline Motion, at ¶ 18 and n.4). Second, the Court, in entering the orders upon the representations set forth in the Extension of Avoidance Action Service Deadline Motion and the Post-confirmation Extension of Avoidance Action Service Deadline Motion, adopted the inconsistent position.

56.     Thus, by serving the Complaint on Ahaus, the Debtors are now attempting to reverse a legal position previously asserted in two of their motions and adopted by the Court in its entry of the Extension of Avoidance Action Service Deadline Order and the Post-confirmation Extension of Avoidance Action Service Deadline Order. Such action is impermissible and, accordingly, the Complaint should be dismissed. See Galerie Des Monnaies of Geneva, Ltd., 55 B.R. at 260 (granting defendant's motion to dismiss where debtor who stated in its disclosure statement that it has no preference actions "may not thereafter reverse its field and commence a preference action for its own benefit.").

## IV.     IT IS INEQUITABLE AND A PERVERSION OF PREFERENCE LAW TO PERMIT THE ADVERSARY PROCEEDING TO GO FORWARD AGAINST AHAUS.

57.     It is unfair to bring the adversary proceeding two years after it would normally be foreclosed by the statute of limitations after not disclosing a suit was filed under seal. Delphi affiliates continued to do business with Ahaus. Ahaus had no reason to think it would be sued for a preference. The Court should not allow itself to be used by the Debtors and their successor to deceive Ahaus. Ahaus has been prejudiced by the delay in the disclosure and  service of the preference complaint. The alleged preferences were received almost 5 years ago. Ahaus has in the ordinary course of business purged some data. It has changed some computer systems. Some witnesses are no longer available. The file notes, e-mails, notes of phone calls would have explained, *inter alia*, why some payments were early and some were late.  It is likely that the legislature fixed a statute of limitations at two years because of factors like those, *inter alia*.

58. The Debtors delayed suing on preferences until they knew who they needed to do business with. Now, they have decided Ahaus is not necessary to have as a bidder on new business. They were thinking of not bringing avoidance actions as creditors would not benefit and it would be costly. Also, they did not want to hurt their relationship with the defendants of avoidance actions. See paragraph 28 above. Indeed, Ahaus did business with some Debtors during their Chapter 11 cases. The Debtors and the successor are, ironically, preferring the ones they are not suing. They are suing only a small percentage of those who allegedly received preferences.

59. There was no valid reason to file the preference actions under seal. There was no emergency or valid reason to keep the alleged preference defendants in the dark that they may be sued for preferences. Various orders, even the confirmation order were improper and subject to being overturned under Bankruptcy Rule 7060 (b). The Debtors filed the preference complaint under seal without notifying the defendants, such as Ahaus. They had *ex parte* communication with the court as Ahaus did not know of the procedure and that a complaint was being filed against it under seal. This was the intent of the Debtors.

60. Delphi did not disclose it was bringing a preference action against Ahaus in the disclosure statements. Under the doctrine of judicial estoppel, it can not now claim it has such an action. The disclosure statements and other documents talk about preserving the avoidance actions and rights under sections 502(d) and 547 of the

Bankruptcy Code for the Debtor, its buyer, funder.   Ahaus was not specifically listed on exhibit 7.18 or 7.24. Even if, *arguendo*, Ahaus or its representative read and understood or was expected to read or understand the voluminous documents filed in this chapter 11 and find a needle in a haystack. This is not adequate notice; this is not due process. The Debtors   said they had no claim against Ahaus and now are trying to assert one.

61.    If the creditors are not told how many preference actions there are, who they are against, how much they are for. They can not analyze whether  the successor entity is "paying" enough for them. So, the successor shouldn't be able to sue on preferences as it didn't "pay" enough for them - bought them unfairly. The transaction by which the successor, Plaintiff, purportedly gained the rights and standing to bring the preference action against Ahaus was not properly approved because the creditors were not notified of the value of the preference actions being transferred to the Plaintiff.  The successor to the Debtors - the reorganized debtor – the Plaintiff is not   a holder in due course. Ahaus can assert arguments against it that it would assert against the Debtors

62.    The Debtors' plan was modified to pay unsecured creditors nothing although initially they were to be paid in full. Similarly, the Debtors asked for a two month extension of the statute of limitations, which has now purportededly morphed in to a two year extension.  At one point a document stated unsecured creditors would get at most $300,000,000. Another document disclosed at one point      there were $11,000,000,000 of liabilities subject to compromise. Based on that alone, unsecured

creditors would receive 4% maximum on their claims. But, a document said that there were $24,000,000,000 of filed non-reduced or expunged proofs of claim. Some claims traders have said the Delphi claims are worthless. The preference action does not help the Debtor, its creditors or its estate. Creditors may not share in any recovery. The successor may not have standing to pursue the preference actions. If some creditors receive a pittance by the Plaintiff suing other creditors for preferences, it is unjust to prefer the creditors not being sued and discriminating against those being sued. With the excuse of doing their fiduciary duty, (See paragraph 21 above) the only ones to benefit significantly are the lawyers for the Plaintiff. Professionals have already received a fortune for doing such a wonderful job in a matter where unsecured creditors are receiving little or nothing. It has not been demonstrated that the Debtors or their estates are benefiting from the avoidance actions.

63.     An unfair burden is placed on unsecured creditors that are now preference defendants. The Debtors and their successor have intentionally worn them down. For its convenience, the successor wanted Ahaus to provide informal discovery, facts, arguments and documents to defend its position, but would not provide any information reasonably requested by Ahaus. It refused to lay out how the statute of limitations for bringing the adversary had not expired and how it was extended beyond March, 2008. Yet, the Debtors' motions speak about the Bankruptcy Court being a court of equity and how they wish to reduce the burden on the defendants of preference actions. It is inefficient to have each defendant go through a docket of over 20,000 docketed documents, some over 1,000 pages, and the documents are very difficult to

understand. They are not light reading. Even if, *arguendo*, the Extension Orders were appropriate, the Plaintiff did not comply with the dictates of those orders by serving them on Ahaus. (See paragraph 25 above.) Then, when Ahaus' attorney asked a few times in writing for an explanation of how the statute of limitations had not expired, he was told that the Plaintiff's attorneys had decided "logistically" not to answer any of Ahaus' questions or provide any documents and not to explain how the statute of limitations had not run because it was too burdensome for them to do so. They could not be burdened. Instead of the Plaintiff, the successor to the Debtors, the party bringing 177 preference actions, putting together the documents to show why the statute of limitations had not run, Ahaus and the other preference defendants should each pay the claimed amount, provide discovery, defend the preference action and/or go through about 20,000 documents to see if the statute of limitations was properly tolled. An individual creditor should not have to spend time and money going through the voluminous Delphi docket. There were perhaps 41 Delphi Debtors. One has to know where to look. In the Delphi Automotive Systems LLC exhibit 3a to the Statement of Affairs there are 209 pages with 57 entities on a page. The exhibit is of those who may have received preferences. Of the over 10,000, perhaps only 177 have been sued. The Plaintiff is doing the opposite of preferring Ahaus – it is discriminating against Ahaus - or preferring the other 10,000 who received payments in the preference period.

64. Preference law is supposed to have creditors treated equally. So, those that received preferences return them and share *pro rata* with other creditors. But, here it is working the opposite in two ways.

1. The parties Delphi wanted to prefer were paid in the ordinary course - so they have a good defense.

2. Delphi and/or its successor is preferring certain potential defendants by not pursuing preference actions against them. If it needs them or wants them for future business or the amount is small or the defendant is judgment proof, it does not pursue them. Ahaus has saved money; its principals have not taken everything as salary or dividend, and not hidden, concealed or transferred its assets. President Obama and many others say the United States needs jobs and small companies create jobs. Preference actions hurt companies that are creditors and get stuck on their claims and also have to pay back what they received - even though they were owed what they received. This can put them out of business. Obama helped GM and Chrysler. The law should not be perverted to hurt innocent companies like Ahaus.

65.     Under Fed. R. Bankr. P. 7012 (b) (1) because the successor is bringing the action as Plaintiff the court lacks jurisdiction despite plan, confirmation order and other documents. The successor to the Debtor - the reorganized debtor – is not  a holder in due course.   As the creditors were not told how many preference actions there were, who they were against, how much they were for, how could they know that the successor entity was "paying" enough for them? So, the successor shouldn't be able to sue on preferences as it didn't "pay" enough for them - bought them unfairly.

66.     Did the Debtors procure goods or services from Ahaus on credit fraudulently?  The goods involved in the preference action were shipped and invoiced by Ahaus August 5, 2005 to August 22, 2005.   In August Delphi engineers were requesting the goods be prepared, finished and shipped. When Delphi got the goods in

August, it accepted them and didn't return them. Did Delphi "know" it was going to file a chapter 11 or not pay for the goods? 9 of the Statement of Financial Affairs of Delphi Automotive Systems LLC shows payments made re debt counseling or bankruptcy in the year before Delphi filed its chapter 11s. It paid Skadden $10,000,000 starting August 8, 2005 with $500,000 and August 19, 2005 with $1,600,000. It paid FTI Consultants $4,000,000 starting September 15, 2005. It paid Rothschild, Inc. $2,000,000 starting August 3, 2005. It paid Shearman $5,000,000 starting July 5, 2005.

67.     Some documents in the Delphi case show the assets are about equal to the non-compromised liabilities - so, there is nothing for the unsecured. Meanwhile, lawyers, accountants and other professionals have received many millions of dollars from the Debtors' estates and are still making substantial monies and seek to make more on the preference actions. They claim it is their fiduciary duty to pursue preference actions. But, they are pursuing only a relative few – and perversely, by means of the preference law, discriminating against the defendants, such as Ahaus, who were not preferred.

**<u>CONCLUSION</u>**

68.     Plaintiffs have engaged in conduct that violates core tenets of American jurisprudence in seeking to conceal from Ahaus that it had been sued for over a two years period of time. Plaintiffs' failure to serve notices of the motions for the Preservation of Estate Claims Procedures Order and each of the Extension Orders was a blatant violation of Ahaus' due process rights and thus, as a matter of law, such orders are void as against Ahaus. In all events, the subject orders were improvidently entered

without notice. Consequently, the Complaint served on Ahaus over two years after the statute of limitation had expired should be dismissed. In the alternative, the Debtors' statements in two of their motions that claims would not be pursued against Ahaus should now bar the assertion of such claims as a matter of judicial estoppel.

## MEMORANDUM OF LAW

69.    The legal points and authorities upon which this motion relies are incorporated herein, Ahaus  therefore respectfully requests that the requirement of filing a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

For all of the foregoing reasons, Ahaus  respectfully requests that (i) each of the Preservation of Estate Claims Procedures Order, the Extension of Avoidance Action Service Deadline Order, the Post-confirmation Extension of Avoidance Action Service Deadline Order, and the Supplemental Post-confirmation Extension of Avoidance Action Service Deadline Order be vacated as against it; (ii) the Complaint against it be dismissed with prejudice for failing to state a claim upon which relief can be granted; or (iii) in the alternative, the Complaint against it be dismissed with prejudice as being barred by judicial estoppel; and (iv) for such other and further relief as this Court may deem appropriate.

Dated: New York, New York
February 25, 2010

**HARRIS D. LEINWAND, ESQ.**
Attorney for Defendant Ahaus Tool & Engineering Inc.

 _/S/_____
Harris D. Leinwand, Esq. (HL-4419)
315 Madison Avenue - Suite 901
New York, NY 10017
Telephone: (212) 7257338